Robert L. WARLICK, Administrator of the Estate of Virden W. Puckett, Plaintiff,

v.

AETNA CASUALTY & SURETY COM-PANY, Defendant.

Civ. No. 795.

United States District Court, E. D. North Carolina, New Bern Division.

May 17, 1971.

John D. Warlick, Jr., of Ellis, Hooper, Warlick & Waters, Jacksonville, N. C., for plaintiff.

Joseph C. Olschner, Jacksonville, N. C., for defendant.

## MEMORANDUM OPINION and ORDER

LARKINS, District Judge:

Now comes this cause before the court without the intervention of a jury in a civil action arising out of an automobile accident occurring in Onslow County, North Carolina. Jurisdiction is based upon diversity of citizenship and requisite statutory amount in controversy is not in dispute.

Plaintiff seeks to recover damages for the death of Virden W. Puckett. In his Complaint, Plaintiff contends that the Defendant issued a policy of insurance on a 1959 Ford automobile owned by Nathan L. Bishop, Sr.; that the 1959 Ford automobile had been loaned to Nathan Bishop, Jr.; and further that on October 24, 1965, said 1959 Ford automobile was loaned to one John W. Niemi by Nathan L. Bishop, Jr.; and that John W. Niemi was driving the car with the express or implied permission of Nathan L. Bishop, Sr., the named insured, at the time of a collision on North Carolina Highway 24.

Defendant in his Answer contends that John W. Niemi did not have permission, either expressed or implied, of Nathan L. Bishop, Sr., or Nathan L. Bishop, Jr. when the accident occurred. Defendant's Answer admits ownership of the vehicle.

It was stipulated between the parties that:

(1) On or about the 9th day of September, 1963, Defendant issued an auto lite automobile insurance policy numbered 64AD41490PC in which Nathan L. Bishop, Sr. was named insured and a 1959 Ford automobile was the insured vehicle, and that said policy was in force and effect on October 24, 1965, at the time of the collision giving rise to the death of Plaintiff's intestate, Virden W. Puckett;

(2) The 1959 Ford automobile named in the aforesaid liability insurance policy was loaned to Nathan L. Bishop, Jr., by Nathan L. Bishop, Sr. prior to October 24, 1965, and said vehicle was under the control of Nathan L. Bishop, Jr., who was stationed at the New River Air Facility on October 24, 1965, at the time of the collision resulting in the death of Plaintiff's intestate;

(3) The aforesaid liability policy issued to Nathan L. Bishop, Sr. by Defendant provided under "person insured" that "under the liability and medical expense coverage the following are insured:

(A) with respect to an owned automobile,

(1) the named insured

(2) any person using such automobile with the permission of the insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and

(3) any other person or organization, but only with respect to his or its liability because of acts or omissions of an insured under (A), (1) or (2) above, and under the definition of the policy.";

(4) The contract of insurance issued by Defendant was written and delivered in the State of Tennessee and the law of Tennessee will control the interpretation of this policy; and

(5) Plaintiff instituted in Superior Court of Onslow County, North Carolina, an action entitled "Robert L. Warlick, Administrator of the Estate of Virden W. Puckett, Plaintiff v. Alex Warlick, Jr., Administrator of the Estate of John W. Niemi, Nathan Bishop, Jr., and Nathan Bishop, Sr., Defendant" to recover damages for the death of Plaintiff's intestate and that Plaintiff recovered Judgment in said action against Defendant Alex Warlick, Jr., Administrator of the Estate of John W. Niemi, in the amount of $50,000.00; and that said Judgment has been docketed but not satisfied.

A trial on the merits of this case was held on the 22nd day of February, 1971 in New Bern, North Carolina. At the close of Plaintiff's evidence, Defendant moved for involuntary dismissal pur-

suant to Rule 41(b) of the Federal Rules of Civil Procedure on the ground that upon the facts and the law, Plaintiff had by his own evidence shown that he was not entitled to relief. The court as trier of fact declined to render any judgment until the close of all the evidence. At the close of all the evidence, Defendant renewed his motion for dismissal under Rule 41(b), and the court took the matter under advisement pending receipt of a transcript.

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the court now makes the following findings of fact:

(1) At the time of the commencement of this action, the Plaintiff's intestate was a resident of the State of Kentucky, and Defendant corporation was a resident of the State of Connecticut; the amount in controversy exceeds $10,000.-00, exclusive of interest and costs; and the accident which Plaintiff complains of occurred on North Carolina Highway 24 east of Jacksonville, North Carolina, in the New Bern Division of the Eastern District of North Carolina, on October 24, 1965;

(2) When the collision occurred, John W. Niemi was driving the 1959 Ford, that the Ford was proceeding in a westerly direction, and that when Niemi pulled out to pass a vehicle traveling in the same direction, Niemi struck head-on another vehicle;

(3) That Nathan L. Bishop, Sr. was the registered owner of the 1959 Ford which he loaned to Nathan L. Bishop, Jr., his son, who was a Marine stationed at the Air Facility which is located approximately two to five miles south of Jacksonville on U.S. Highway #17;

(4) That at the time this automobile was loaned by the owner to his son, no restrictions or other conditions of use were placed on the operation of the vehicle;

(5) That on the 24th day of October, 1965, Nathan Bishop, Jr. loaned the vehicle in question to John W. Niemi with both the implied and expressed instructions that Niemi could drive to the Dime-O-Mat and downtown area of Jacksonville and was to return to the Air Facility before 6:00 p. m.;

(6) That Niemi failed to adhere to the instructions given by Nathan Bishop, Jr. to drive only in the downtown area of Jacksonville and to return by 6:00 p. m.;

(7) That when Niemi had visited the Dime-O-Mat and Downtown Jacksonville, he returned to U.S. Highway #17 upon which he turned right toward Swansboro rather than left which leads to the USMC Air Facility;

(8) That Niemi drove to Swansboro, North Carolina, a distance of about twenty miles where he visited a bar known as The Waterway from about 4:00 p. m. or 5:00 p. m. until about 8:00 p. m. and consumed a quantity of beer;

(9) That as Niemi was leaving Swansboro and returning to the Air Facility along N.C. Highway #24 he was involved in a head-on collision and killed;

(10) That when the 1959 Ford was driven by Niemi to Jacksonville and Swansboro it was on a personal errand of Niemi's; and

(11) That Nathan Bishop, Sr. was not acquainted with nor had he ever seen John Niemi.

## CONCLUSIONS OF LAW

It has been stipulated to that the law of Tennessee will control the interpretation of this policy of insurance to determine whether the driver was operating said automobile with the permission of the owner at the time of the collision. It is the law of Tennessee that in the absence of some showing that expressed or implied permission was given to the second permittee (Niemi) by the named insured (Nathan Bishop, Sr.), then the second permittee is not covered by the omnibus clause of the automobile insurance policy. See Schultz v. Tenn. Farmers Mutual Ins. Co., 218 Tenn. 465, 404 S.W.2d 480 (1966). There is no coverage even when the named insured gives the first permittee (Nathan Bish-

op, Jr.) unqualified dominion over the car unless some other circumstances appear. Teague v. Tate, 213 Tenn. 269, 375 S.W.2d 840 (1964).

 Furthermore, under the Tennessee Financial Responsibility Act as interpreted by the Tennessee Supreme Court, John Niemi was an insured within the meaning of Defendant's policy *only if* at the time of the accident causing the death of Plaintiff's intestate he was operating the Bishop vehicle with the expressed or implied permission of the named insured. Commercial Union Ins. Co. v. Universal Underwriters, Tenn., 442 S.W.2d 614 (1969). One has only limited permission where the owner limits use to a specific area for a limited time. And under those circumstances the coverage of the omnibus clause is not extended to his use of the car any place or for any purpose not consented to nor reasonably contemplated by the owner in giving initial permission. Moore v. Liberty Mutual Ins. Co., 193 Tenn. 519, 246 S.W.2d 960. The initial permission is not controlling where the use is limited to a specific purpose for a limited time and the driver takes the car for his own purposes and has an accident when using the car in a complete departure from any business of or permission by the owner. Hubbard v. U. S. Fidelity & Guaranty Co., 192 Tenn. 210, 240 S.W.2d 245.

 In the case at bar Plaintiff must fail; first, because Niemi's permission came not from the named insured but from the first permittee; and secondly, because Niemi exceeded the scope of the limited permission given him by the first permittee. Even the spectre of the doctrine of slight deviation will not save Plaintiff's case for in Tennessee a distinction has been made between cases involving general custody and limited possession. In those cases involving limited permission, the coverage of the omnibus clause is not extended to uses not contemplated. Moore v. Liberty, 193 Tenn. 519, 246 S.W.2d 960.