# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 8, 2004 Session

# LUDMILLA LAMBRIGHT, ET AL. v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA

**Appeal from the Chancery Court for Montgomery County**
**No. 2001-01-0085     Carol Catalano, Chancellor**

---

**No. M2003-02133-COA-R3-CV - Filed February 3, 2005**

---

All parties sought declaratory judgment as to whether or not driver Michael George Eberly was an omnibus insured under the permissive user provisions of his employer's policy of insurance at the time of the accident in issue. The Chancellor in non-jury trial found that Eberly had only engaged in a "minor deviation" from employer restrictions on his permissive use of the vehicle, and required National Union Fire Insurance Company to protect Eberly as an omnibus insured under the policy. We reverse the action of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL and FRANK G. CLEMENT, JR., JJ., joined.

Robert Orr, Nashville, Tennessee, for the appellant, National Union Fire Insurance Company of Pittsburgh, Pennsylvania.

Peter M. Olson, Clarksville, Tennessee, for the appellees, Ludmilla Lambright and Antonio Lambright.

C. Benton Patton, Nashville, Tennessee, for the appellee, United Services Automobile Association.

Frank Thomas, Nashville, Tennessee, for the appellee Michael George Eberly.

John Thomas Feeney, III, Nashville, Tennessee, for the appellee, Progressive Insurance Company.

1

**OPINION**

National Union Fire Insurance Company filed a declaratory judgment action, naming Ludmilla Lambright and husband, Antonio Lambright, and Michael George Eberly as defendants and seeking a determination of whether or not Michael George Eberly was afforded insurance coverage under the omnibus clause of the National Union policy. The Lambrights answered and filed a cross claim against their own uninsured motorist carrier, Union Services Automobile Association (USAA). They also joined Progressive Insurance Company as a defendant since Progressive was the insurance carrier for Michael George Eberly as to his private automobile. USAA answered. Progressive then answered and cross claimed against Eberly, seeking to avoid its coverage of Eberly under his private vehicle policy. National Union then voluntarily non-suited its declaratory judgment action, after which the Eberlys instituted their own declaratory judgment action against National Union and Eberly. National Union then filed its motion for summary judgment against the Lambrights and Eberly, and over the next several months USAA and Progressive responded to National Union's motion for summary judgment, with Progressive supporting the motion and USAA opposing the motion. The Lambrights then filed their opposition to the motion for summary judgment. Since the final judgment in the case held that Eberly was an omnibus insured under the National Union policy, the court likewise held that the Lambrights were not entitled to any relief against their uninsured motorist carrier, USAA, and further held that Eberly had no claim against Progressive as an insurer relative to his private vehicle.

In a rather unorthodox procedure the trial court, with the consent of all parties, converted a scheduled hearing on a motion for summary judgment into a non-jury trial on the merits. The controlling facts in the case are all but undisputed. GTE Government Systems Corporation employed Michael George Eberly in 1989 because of his skill and experience as a service technician concerning radio and other communications equipment. On his employment application, Eberly disclosed to GTE that he had two prior convictions for driving under the influence of an intoxicant. His duties for GTE involved providing technical assistance to the Army at Ft. Campbell, Kentucky. Beginning in 1992, GTE provided Eberly with a company-owned vehicle for Eberly's use in providing technical support service to the U.S. Army.

Eberly was permitted possession, control and use of a GTE company vehicle from that date in 1992 until he was involved in the accident in issue in this case which occurred January 15, 1999. Among Eberly's duties was to be "on call" twenty-four hours a day. Thus, Eberly was required as a condition of his employment to drive his service vehicle to and from his home and place of work. GTE entrusted Eberly with all responsibility for the upkeep of the vehicle subject to reimbursement by GTE of the cost of such maintenance. GTE also imposed a policy limiting Eberly from personal use of the vehicle. GTE also maintained a policy prohibiting the use of a GTE vehicle at any time that the driver had consumed or was consuming alcohol.

On January 15, 1999, Eberly was returning from work to his home on the ordinary road route that he customarily traveled and was within the timeframe that he ordinarily returned to his home from work. En route to his home, Eberly stopped at the Golden Nugget Lounge where he consumed

2

four cans of beer over a one-hour period of time. The location of the lounge was on the road route customarily traveled by Eberly from work to his home. After his stop at the Golden Nugget Lounge, Eberly resumed his customary road route toward his home. He stopped at a Texaco station to purchase gasoline with a credit card provided by GTE. He then resumed his customary road route home, but before arriving at his home he struck the vehicle driven by Ludmilla Lambright in the rear. After the wreck, Eberly registered a .15 blood alcohol content in a breath alcohol test. He pleaded guilty thereafter to driving under the influence of an intoxicant, resulting in loss of driving privileges and the necessity of obtaining a restricted drivers license. At the time of the wreck on January 15, 1999, Eberly was aware of the GTE policy prohibiting operation of the company vehicle after ingesting alcoholic beverages.

Following the accident, Eberly tendered his resignation to his supervisor, Richard Kluck, who felt that termination of employment was necessary. Regional Manager Cooper, however, chose to suspend Eberly for three days and possibly withhold a pay raise rather than to terminate his employment.

The trial court, relying heavily on the employer's post-accident decision to impose minimal discipline upon Eberly, determined that his conduct constituted a "minor deviation" from his permissive user and that such deviation did not disqualify him from insurance coverage under the omnibus clause of his employer's insurance policy. National Union Fire Insurance Company filed a timely appeal.

The as yet unresolved question of *respondeat superior* of the employer, GTE, for the actions of Michael George Eberly is not before the court in this declaratory judgment proceeding. That question will be resolved in the parallel tort case presently pending in the Circuit Court for Montgomery County, Tennessee, between Ludmilla Lambright and husband, Antonio Lambright, plaintiffs, and GTE and Michael George Eberly, defendants. This case solely deals with whether or not National Union Fire Insurance Company must extend coverage to and defend Michael George Eberly individually under the "omnibus clause" of its insurance policy issued to GTE as named insured.

Deviation from his route to his home from his place of work has little to do with Eberly's status as an omnibus insured under the policy. It is his intoxication while driving his employer's vehicle that is determinative. Eberly admits that at the time of the accident he had been long familiar with GTE's express instructions prohibiting personal use of the vehicle and its further rule prohibiting driving its vehicles after consuming any alcohol.

We must reiterate that we are not concerned with Eberly's violation of the two policies prohibiting personal use of a company vehicle and operation of a company vehicle after consumption of alcohol as those policies relate to whether or not Eberly was driving the vehicle within the scope of his employment by GTE and was on the business of his employer at the time of the accident. Those questions will be resolved in the tort action. We are dealing here solely with a determination of whether or not Eberly is an omnibus insured under the permissive user clause of the National

Union Fire Insurance Company policy. Resolution of this issue is personal to Michael George Eberly and is not determinative of National Union's obligation to provide coverage to its named insured, GTE, in the tort action.

While both *Moore v. Liberty Mut. Ins. Co.*, 246 S.W.2d 960 (Tenn. 1952) and *Tenn. Farmers Mut. Ins. Co. v. Witt*, 857 S.W.2d 26 (Tenn. 1993) concern insured status of drivers who were driving under the influence of alcohol, neither of those cases involve the omnibus status of a person driving under the influence of an intoxicant at a time when he had full knowledge of his employer's strict rules against personal use of the vehicle or against use of the vehicle after he had consumed alcohol.

Cases from other jurisdictions are enlightening and somewhat diverse. *General Accident Ins. Co. of America v. Margerum,* 544 A.2d 512 (Pa. Super. Ct. 1988) was a declaratory judgment action under facts quite similar to the case at bar. Peter S. Hricko owned a roofing company and employed Ira Margerum, whom he considered a dependable employee, as a roofer.

> In mid-January, with the onset of unfavorable winter weather, Hricko offered a van to Margerum with the following instructions: that it be used solely for commuting between home and work, that Margerum not drink and drive, and that the van not be used for personal reasons.

*Margerum,* 544 A.2d 512, 513.

On January 22, 1982, Margerum requested permission to leave work early in order to attend his sister's wedding. Hricko granted the request but specifically instructed Margerum not to take the van to the reception and not consume alcoholic beverage while driving the van. Margerum followed these instructions using other means of transportation until he got home from the wedding, then packed his clothes and drove the van about seven miles toward his fiancee's residence where he intended to spend the night. The residence of his fiancee was on the same route he would take to return to the roofing company, but before he reached her residence he struck and killed a pedestrian walking along the road. At the time of the accident Margerum was intoxicated, having steadily consumed alcohol at the wedding reception. He was subsequently charged and convicted of driving under the influence.

The trial court held that Margerum was an omnibus insured under the policy and General Accident Insurance Company appealed. The superior court on appeal held that the physical deviation by Margerum was not a substantial deviation from Hricko's permission but reversed the judgment of the trial court as to driving under the influence. Said the court:

> Nevertheless, the court erred in concluding that there was no substantial deviation from Hricko's permission. By driving under the influence of alcohol, Margerum violated an express specific restriction on his use of the van. Hricko's reiteration of the restriction the day before the accident indicates that the restriction was not

inconsequential. Since Margerum violated an express specific restriction of Hricko's permission to use the van, his deviation in use from Hricko's express permission was a substantial deviation. As a result, Margerum is not an insured under General Accident's policy with Hricko.

*Margerum,* 544 A.2d at 514.

Three years after *Margerum* was decided, the U.S. Court of Appeals for the Third Circuit applied this rule in *Hall v. Wilkerson,* 926 Fed. 2d 311 (Third Ct. 1991). The vigorous dissenting opinion of Senior District Judge Fullam was acknowledged but rejected by the majority in *Hall,* which held *Margerum* to be controlling. Said the majority:

We are not insensitive to the policy concerns forcefully expressed by the dissent. However, we are not free in diversity cases to apply our own notion of policy, but must predict that which is likely to be accepted by the Pennsylvania Supreme Court. The dissent suggests that that court will not accept the holding of the only Pennsylvania Appellate Court to speak to the issue. We are not convinced that the Superior Court's *Margerum* decision is so far out of the mainstream of state law that it will be rejected by the Supreme Court.

*Hall v. Wilkerson*, 926 F.2d 311, 316 (Third Cir. 1991).

In a later case based on diversity jurisdiction, the U.S. District Court for the Eastern District of Pennsylvania again followed *Margerum* in a case in which a driver, in direct violation of his employer's known rule against driving a vehicle while intoxicated, was denied omnibus coverage. *Tico Ins. Co. v. March*, 155 Supp.2d 441 (E. D. Penn. 2001).

Two reported decisions from sister jurisdictions are directly in point as to the issues involved in the case at bar. *See Warner Trucking, Inc. v. Carolina Cas. Ins. Co.*, 686 N.E.2d 102 (Ind.1997) and *Barfield v. Royal Ins. Co. of America*, 492 S.E.2d 688 (Ga. App. 1997).

Warner Trucking involved a car/truck collision with the following facts:

The plaintiffs-appellees, Carl and Sheri Hall, were injured when their automobile collided with a truck owned by the defendant-appellant Warner Trucking, Inc., and driven by its employee, Carl Manuel. The Halls brought an action for damages against Warner Trucking and its driver. The Halls alleged vicarious liability against the trucking company on grounds that the driver was working within the scope of his employment when the accident occurred. Warner Trucking's liability insurance carrier, Carolina Casualty Insurance Company, brought a separate action for declaratory judgment to establish that it had no obligation under its insurance contract with Warner Trucking to defend or provide coverage for the claims seeking to impose personal liability upon the employee-driver.

5

*Warner Trucking Co.,* 686 N.E.2d at 104.

Making the critical distinction between respondeat superior liability of Warner for the acts of the driver Manuel on the one hand, and the status of Manuel as an omnibus insured under the policy on the other hand, the Supreme Court of Indiana held:

> Contrary to Warner Trucking's argument, the existence of a rule prohibiting behavior is not solely determinative. An employer is vicariously liable for the wrongful acts of employees committed within the scope of employment. *Stropes by Taylor v. Heritage House Childrens Center of Shelbyville, Inc.*, 547 N.E2d 244, 247 (Ind. 1989). The critical inquiry is not whether an employee violates his employer's rules, but whether the employee is in the service of the employer. Even though an employee violates the employer's rules, orders, or instructions, or engages in expressly forbidden actions, an employer may be held accountable for the wrongful act if the employee was acting within the scope of employment. *See Eagle Motor Lines, Inc. v. Galloway*, 426 N.E.2d 1322, 1325 n. 3 (Ind. Ct. App. 1981); *Mock v. Polley*, 116 Ind. App. 580, 586-87, 66 N.E.2d 78, 81 (1946); *The Pittsburgh, Cincinnati and St. Louis Ry. Co. v. Kirk*, 102 Ind. 399, 402, 1 N.E. 849, 852 (1885). Acts done "on the employee's own initiative, with no intention to perform it as part of or incident to the service for which he is employed" are not "in the service of the employer" and are thus outside the scope of employment. *Stropes*, 547 N.E.2d at 247 (citations omitted). However, an employee's wrongful act may still fall within the scope of his employment if "his purpose was, to an appreciable extent, to further his employer's business, even if the act was predominantly motivated by an intention to benefit the employee himself" or if the employee's act "originated in activities so closely associated with the employment relationship as to fall within its scope." *Id*. Warner Trucking's vicarious liability for the acts of its driver therefore does not depend upon the driver's permission to drive, but rather upon the relationship of the driver's activities to the business of Warner Trucking.

*Warner Trucking Co., Inc.,* 686 N.E.2d at 105.

The Indiana Supreme Court then addressed Carolina Casualty's motion for summary judgment as to the driver, Manuel, under the omnibus clause of its policy. Said the court:

> In its declaratory judgment action, Carolina Casualty does not question its contractual obligation to provide coverage for Warner Trucking, but seeks to establish that its insurance policy provides no coverage for liability that may be personally imposed upon the driver of the Warner Trucking vehicle involved in the accident. Carolina Casualty contends that its summary judgment motion should have been granted because the policy provides no coverage for the personal liability of employees driving a company vehicle without permission. Carolina Casualty's claim of no coverage is based not upon the issue of scope of employment, but rather upon

6

its contention that the employee drove contrary to Warner Trucking's express rule denying permission to drivers who had been drinking.

. . . .

The materials designated for consideration in the summary judgment proceeding included Warner Trucking's previously noted rule that "no driver was allowed to drive a company vehicle if the driver had consumed any alcoholic beverage that day, regardless of quantity consumed." . . . The Halls do not challenge the evidence that the driver was seen consuming alcohol and they designate no evidentiary materials challenging the existence, nature, or content of the rule prohibiting driving after consumption of alcohol. Nor do they raise any issue as to whether Warner Trucking actually communicated this rule to its driver or whether the rule was consistently enforced. In response to Carolina Casualty's claim that the rule expressly restricted the grant of permission, the Halls only point to the fact that Warner Trucking had provided its driver with his own set of keys to the truck, that he had an early delivery scheduled for June 15, that the company had provided cash to purchase fuel, and that drivers regularly filled their tanks with fuel before making their run.

While these matters may be relevant to whether the employee acted within the scope of the employment, they are insufficient to contradict the designated materials which establish that the Warner Trucking driver's use of the company truck was restricted in the first instance – when he began to use the company truck after consuming alcohol. As recognized in *Gonterman*, implied permission is inadequate as a matter of law to overcome Warner Trucking's express restriction upon permission in the first instance. *Gonterman*, 637 N.E.2d at 814. Thus, because there is no issue of fact regarding the driver's violation of the company rule restricting permission, the Halls' claim of implied permission fails. There is no genuine issue of material fact as to the application of section (D)(2) defining "who is insured" in the Carolina Casualty insurance policy. The driver is not an insured under this provision.

*Warner Trucking, Inc.*, 686 N.E.2d at 106-7 (footnotes omitted).

The court then affirmed the denial of Warner Trucking's motion for summary judgment as to respondeat superior and remanded the case to the trial court with instructions to grant the summary judgment motion of Carolina Casualty under the omnibus clause of the policy.

7

The same issues were before the Court of Appeals of Georgia in *Barfield, et al. v. Royal Ins. Co. of America*, et al., 492 S.E.2d 688 (Ga. App. 1997).[1] This was a declaratory judgment action brought by Royal Insurance Company and its named insured, Single Source Roofing Corp., to determine their liability for damages arising from an automobile accident involving Single Source's employee, Andrew Fisher, who was a named defendant in the case. The other named defendants in the case were Billy Barfield and other occupants of four vehicles, these occupants having been injured in an automobile wreck with a Single Source vehicle driven by Andrew Fisher. The driver, Fisher, had express instructions not to drive the vehicle after drinking. The trial court granted summary judgment to Single Source under respondeat superior and to Royal under the permissive user provisions of the omnibus clause in the policy. Based upon reasoning very closely parallel to the reasoning in *Warner Trucking*, the Court of Appeals of Georgia held that summary judgment was improperly granted as to respondeat superior. As to the omnibus clause of the policy and relying on *General Accident Ins. Co. of America v. Margerum*, 544 A. 2d 512 (Penn. Super. Ct. 1988), the Georgia Court held:

> "Permissive use" clauses such as the one in Royal's policy are valid, even where the named insured can limit the scope of the permission through instructions, rules, or regulations. *See Massachusetts Bay. Ins. Co. v. Wooten*, 215 Ga. App. 386, 387(1), 450 S.E.2d 857 (1994). On several occasions, this Court has held that where a driver uses a vehicle with permission, but violates the scope of the permission granted by engaging in activity the named insured has expressly forbidden, the driver is not an "insured" under the permissive use clause of a policy such as Royal's for any collision occurring during the driver's unauthorized use. See, e.g., *Wooten*, 215 Ga. App. at 387-388, 450 S.E.2d 857; *Select Ins. Co. v. Register*, 192 Ga. App. 145, 147, 384 S.E.2d 238 (1989).

> Both *Wooten* and *Register* involved drivers who used the insured vehicle for a *purpose* forbidden by the owner. Here, although Fisher used the truck in an unauthorized *manner* by driving it while under the influence of alcohol, we find the rationale of the prior cases applicable. "[T]here is an absence of permission within the meaning of the policy if the vehicle is being driven at a time or a place or for a purpose not authorized by the insured." (Citation and punctuation omitted.) *Register*, 192 Ga. App. at 147, 384 S.E.2d 238. The test of permission under the provision at hand is an objective one, and does not involve the question of whether Fisher "reasonably believed" he had permission to drive the truck. See *Hurst v. Grange Mut. Cas. Co.*, 266 Ga. 712, 713(1), 470 S.E.2d 659 (1996). Because the uncontradicted evidence shows Single Source told Fisher he could not drive the vehicle when he was drinking, his use of the vehicle at a time he was admittedly under the influence of alcohol was unauthorized and non-permissive.

---

[1] The *Barfield* case from Georgia was issued October 1, 1997, while the *Warner Trucking, Inc.*, opinion from Indiana was issued October 7, 1997.

*Barfield v. Royal Ins. Co. of America*, 492 S.E.2d 688, 690-91(Ga. App. 1997).

The Court of Appeals of Missouri took a position directly contrary to the rules set forth in *Margerum*, *Warner Trucking*, and *Barfield*, holding under Missouri law:

> Relying on *Sullivan* and *Lewellen*, we find the omnibus clause in Employer's policy extended coverage to Hyman for this accident despite his violation of Employer's rule against drinking alcohol while driving the van.
>
> In reaching this conclusion, we have not ignored cases cited by United from other jurisdictions which hold that an employee who uses his employer's vehicle while under the influence of alcohol, in violation of an express specific restriction against such use, substantially deviates from the original use, and, thus, the employee is not insured under the employer's policy. *See, e.g., General Accident Ins. Co. of Am. v. Margerum*, 375 Pa. Super. 361, 544 A.2d 512 (1988); *Warner Trucking, Inc., v. Carolina Cas.*, 686 N.E.2d 102 (Ind. 1997); *Barfield v. Royal Ins. Co. of Am.*, 492 S.E.2d 688 (Ga. App. 1997). When there is no controlling authority from Missouri courts, we *may* look to judicial decisions of sister states for assistance in discovering expressions of public policy. *Eyerman v. Mercantile Trust Co.*, 524 S.W.2d 210, 217[9] (Mo. App. 1975). Earlier in this opinion, we did rely on foreign authority for guidance. However, opinions of courts of other states, even on similar facts, do not have controlling effect. *Triplett v. Shafer*, 300 S.W.2d 528, 530 (Mo. App. 1957). "Like witnesses, foreign authority should be weighed and not counted." *Michigan Mut. Liab. Co. v. Stallings*, 523 S.W.2d 539, 545[6] (Mo. App. 1975). This court adopts the views expressed in *Sullivan* and *Lewellen* rather than those stated in *Margerum*, *Warner Trucking*, and *Barfield*. We do so in the belief that *Sullivan* and *Lewellen* are in harmony with Missouri's public policy concerning liability coverage for negligent motor vehicle operators. *See Halpin v. Am. Family Mut. Ins. Co.*, 823 S.W.2d 479, 482[4] (Mo. Banc 1992).

*United Fire and Cas. Co. v. Tharp,* 46 S.W.3d 99, 107-8 (Mo. App. 2001).

While there is a certain parallelism between respondeat superior under agency principles and permissive user under omnibus insurance clauses, the law as to each is separate and distinct. Tennessee law as to the scope of permissive user under an omnibus clause is considered at length in *Estate of Adkins v. White Consolidated Ind., Inc*., et al., 788 S.W.2d 815 (Tenn. Ct. App. 1989). Subsequent cases have considerably narrowed the scope of "the liberal initial permission or hell or high water rule . . ." *See Estate of Adkins*, 288 S.W.2d at 817(quoting Couch, G., Couch on Insurance 2d, § 45:464 at 845-46 (1981 and Supp. 1988) (footnotes omitted) This rule enunciated by our Supreme Court in *Stovall v. New York Indemn. Co.,* 8 S.W.2d 473 (Tenn. 1928) provided that when the owner's permission was granted initially what happened thereafter was immaterial for omnibus clause purposes.

> If . . . the automobile covered by the policy is delivered to another for use, with the permission of the owner or insured, his subsequent use of it is with the permission of the insured, within the meaning of the policy, regardless of whether the automobile is driven to a place or for a purpose not within the contemplation of the insured when he parted with possession.

*Stovall*, 8 S.W.2d at 477.

The supreme court retreated from *Stovall* in *Hubbard v. U.S. Fidelity & Guaranty Co.*, 240 S.W.2d 245 (Tenn. 1951). Repetition of the analysis of cases subsequent to *Stovall* such as appears in *Estate of Adkins* is unnecessary to a decision in this case. It is enough to say that *Stovall* and its progeny apply only to cases where the initial permissive user is broad and unrestricted. Said the court in *Adkins*:

> In *Moore v. Liberty Mut. Ins. Co.*, 193 Tenn. (29 Beeler) 519, 246 S.W.2d 960 (1952), the Supreme Court again clarified the permission rules in *Hubbard*, *Stovall*, and an unreported case, *Romines v. The Preferred Accident Ins. Co.*, decided November 26, 1932. According to the *Moore* Court, *Hubbard* and *Romines* held:
>
> > [W]here one has only limited permission of the owner to use the car in a *specified area* for *a limited time* and *particular purpose* and does not have general discretion as to the use of the car, then the coverage of the omnibus clause is not extended to his use of the car any place or for a purpose not consented to nor reasonably contemplated by the owner in giving the initial permission.
>
> 193 Tenn. at 522, 246 S.W.2d at 961 (emphasis added).
>
> In *Moore*, the employee truck driver had his employer's limited permission to personally use the truck after hours to move furniture within the city of Nashville. Instead, he went on an entirely different and independent mission to Murfreesboro, drank whiskey with a friend, and was involved in an accident. The court found that the employee was not acting with the permission of the named insured and therefore there was no coverage under the policy. The *Hubbard, Romines*, and *Stovall* cases "turn upon the distinction of general custody and limited permission." *Id.*
>
> Shortly after the *Moore* decision was announced, the Sixth Circuit Court of Appeals addressed the same issue in *Branch v. U.S. Fidelity & Guaranty Co.*, 198 F.2d 1007, 1011 (6th Cir. 1952). The court noted that Tennessee had adopted the liberal initial permission rule in *Stovall* in 1928, but that the *Caldwell*, *Romines*, *Hubbard*, and *Moore* cases limit the broad rule as stated in *Stovall*. The *Branch* court stated:

10

> In our opinion, the controlling rule of law in Tennessee, as it presently exists, is as expressed in the case of *Moore v. Liberty Mutual Ins. Co.*, supra, its latest ruling on the question, which draws the distinction between general custody of and limited permission to use the insured automobile, rejecting the earlier rule announced in the *Stovall* case that liability exists where the original possession of the car was with the permission of the owner, regardless of its unauthorized and unanticipated use thereafter.

> 198 F.2d at 1011.

*Estate of Adkins v. White Consol. Ind.*, *et al.*, 788 S.W.2d 815, 819 (Tenn. Ct. App. 1989).

Tennessee cases involving use of alcohol point clearly in the direction of the rules set forth in *Warner* and *Barfield*. Closest by analogy is *Moore v. Liberty Mut. Ins. Co.*, 246 S.W.2d 960 (Tenn. 1952). However, the court in the *Moore* case did not specifically address any issue about the use of alcohol nor does the opinion show any specific rule of the employer about the use of alcohol.

In *Tenn. Farmers Mut. Ins. Co. v. Witt*, 857 S.W.2d 26 (Tenn. 1993), a policy of insurance was issued to Ronald Witt, who was, in fact, the driver of the automobile at the time of the accident. While Witt and a fellow employee, Robert Michalski, were on the business of their employer, Michalski leased an automobile from a Hertz rental agency. At the time of the accident, Witt was driving the automobile with the permission of Michalski and was driving under the influence of alcohol. This vehicle qualified as "a non-owned auto" under the Tennessee Farmers Mutual policy issued to Witt. The position of Tennessee Farmers Mutual is a bit puzzling:

> Tennessee Farmers Mutual contends that the operation of the vehicle while under the influence of alcohol was not use of the vehicle "within the scope of the consent of the owner" as required by the insurance contract and, therefore, coverage was excluded. It implicitly acknowledges that the policy extended coverage to the leased vehicle as "a non-owned auto" while operated by Witt, except when Witt was under the influence of alcohol. Its argument apparently is that coverage ceased at such time as the insured became under the influence of alcohol because he then no longer had the owner's consent to operate the rental car.

*Witt,* 857 S.W.2d 26 at 29.

Holding that Witt's permission to drive the automobile was general and without limitation, the supreme court found that he was covered under his own policy of insurance.

> Here, Witt's permission as an "authorized driver" to use the vehicle without limitation as to time, place, and purpose constitutes general custody of the vehicle. At the time of loss, Witt was an authorized operator. His operation of the vehicle

11

while under the influence of alcohol did not violate any provision of the lease contract regarding time, place, or purpose of use. Nor did the circumstances of his operation of the vehicle, while under the influence of alcohol, convert the general custody bailment into one of limited permission. He still had the owner's consent to operate the vehicle, though he did not have permission to operate it while under the influence of alcohol.

*Witt,* 857 S.W.2d 26, 31. The *Witt* case sheds very little light on permissive user under the omnibus clause of an insurance policy.

In this case, Eberly was well aware for many years of his employer's policies prohibiting personal use of its vehicle and specifically prohibiting anyone to drive a company vehicle at any time after consuming alcohol. Driving home from work he stopped and consumed enough alcohol to register a .15 on the intoximeter. He then re-entered the company vehicle, drove to a service station, filled the truck with gasoline and proceeded on toward his home. The collision occurred before he could reach home. He does not deny that he drank alcohol before resuming his journey home. While he denies that he was under the influence of alcohol, he pleaded guilty to driving under the influence.

We believe that the policy most in conformity with existing Tennessee law and the more sound policy is to follow *Margerum*, *Warner* and *Barfield* in holding that driving under the influence of an intoxicant, in and of itself, in violation of express rules of the employer is fatal to the driver's status as a permissive user under the omnibus clause of an insurance policy.

Under the *Margerum*, *Warner* and *Barfield* analysis, time, place and purpose in the use of the vehicle have little relevance. If Eberly, with permission to drive the vehicle to his home, had driven in a straight route from work to home and, without deviating from that route, had taken alcoholic beverages from the glove compartment of the truck and consumed them en route, time, place and purpose remained within the scope of his permissive use. What exceeds the scope of his permissive use for omnibus insured purposes is his consumption of alcohol in violation of the limitations imposed upon him by his employer. This is not to say that the "zero tolerance" policy of the employer rule automatically controls the issue. The logical result of such a holding would be that the driver stopping for holy communion en route to his home would lose his omnibus insured status. The employer rule relative to the use of alcohol is subject to the same "minor deviation" rule as is applicable to personal use of the vehicle in violation of an employer rule. In this case, Eberly consumed alcohol to the extent that his blood alcohol level was one and one-half times the statutory level creating presumptive impairment.[2]

Whether or not National Union Fire Insurance Company must answer to the plaintiffs in damages for the conduct of Eberly must wait the determination in the tort case of respondeat superior issues. The only issue in this case is whether or not Eberly is an omnibus insured under the National

---

[2]At the time of the accident TCA § 55-10-408 provided that (.10%) weight of blood alcohol created the presumption. The statute was amended by Chapter 855 of the Public Acts of 2002 to reduce the weight of alcohol level to (.08%).

Union policy under its permissive user provisions. His voluntary intoxication in violation of his employer's rules disqualifies him from such status.

The judgment of the trial court is reversed and judgment will be entered in favor of the National Union Fire Insurance Company. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are assessed to Ludmilla Lambright and Antonio Lambright.

_____

WILLIAM B. CAIN, JUDGE